IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PEACH STATE ROOFING, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KIRLIN BUILDERS, LLC, ) | |
| *formerly known as* John J. Kirlin ) | |
| Special Projects, LLC, and BMH ) | |
| ENGINEERING, LLC, ) | |
| ) | |
| Defendants. ) | |
| _____ | CIV. ACT. NO. 1:15cv526-CSC |
| | (WO) |
| KIRLIN BUILDERS, LLC, ) | |
| ) | |
| Counter Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| PEACH STATE ROOFING, INC., ) | |
| ) | |
| Counter Defendant. ) | |
| _____ | |
| KIRLIN BUILDERS, LLC, ) | |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NORTH AM. SPECIALITY INS. CO., ) | |
| ) | |
| Third Party Defendant. ) | |

**MEMORANDUM OPINION and ORDER**

**INTRODUCTION**

Plaintiff Peach State Roofing, Inc. ("Peach State") filed this action on July 22, 2015, against defendants Kirlin Builders, LLC ("Kirlin")[1] and BMH Engineering, LLC ("BMH")[2] alleging claims of anticipatory breach of contract and breach of contract, wrongful termination, promissory estoppel, quantum meruit, negligence, negligent misrepresentation, respondeat superior, suppression, deceit, non-disclosure and concealment of material facts.

The Court has jurisdiction over these claims pursuant to its diversity jurisdiction and applied Maryland law based on the choice of law provisions in the contract documents. *See* 28 U.S.C. § 1332(a)(1). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

A bench trial was held on December 12, 2016, and on June 22, 2019, the Court entered a memorandum opinion and order granting judgment in favor of Peach State and against Kirlin on Peach State's breach of contract and wrongful termination claims

Because the parties were unable to resolve the amount of damages owed Peach State, the parties submitted briefs setting forth their positions and detailing their damages calculations. The issue of damages is fully briefed and ripe for resolution. Upon consideration of the evidence, the briefs of the parties, and Maryland law, the Court

---

[1] Kirlin was previously known as John J. Kirlin Special Projects, LLC ("JJKSP") but during the pendency of this litigation, changed its name. For ease of reference, the court refers to this defendant as Kirlin.

[2] The Court also granted judgment as a matter of law in favor of BMH Engineering and against Peach State, and granted judgment in favor of Peach State and NAS on Kirlin's counterclaim. (Doc. # 111 at 82). The Court granted judgment in favor of Kirlin and against Peach State on Peach State's claims of promissory estoppel, unjust enrichment, negligence, negligent misrepresentation, declaratory judgment, respondent superior, suppression, deceit, non-disclosure and concealment of material facts. (*Id.*)

concludes that Peach State is entitled to damages in the amount of $570,212.52 which constitutes the amount of Peach State's unpaid job costs plus ten (10) percent as contemplated by the Subcontract. The Court further concludes that Peach State is entitled to prejudgment interest, but it is not entitled to damages for lost profits or an award of attorney's fees. The Court will award costs to Peach State, but those are not properly before the Court at this time.[3]

## DISCUSSION

In its memorandum opinion and order dated June 22, 2018, the Court concluded that Kirlin materially breached the terms of the Subcontract when it hindered Peach State from completing work on the roof by withholding critical information and actively misleading Peach State. (Doc. 111). The Court found in favor of Peach State on its breach of contract and wrongful termination claims. (*Id.*).

> Under Maryland law, a court must "give force and effect to the words of the contract without regard to what the parties to the contract meant or what they intended it to mean." *Hashmi v. Bennett*, 416 Md. 707, 7 A.3d 1059, 1068 (Md. 2010) (internal citation and quotation marks omitted). In other words, the court interprets a contract by determining "from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Id.* (internal citation and quotation marks omitted).

*JJK Group, Inc. v. VW Intern., Inc.* 2015 WL 1459841 (D.Ct. Md. Mar. 27, 2015).

Because there is no dispute that Peach State and Kirlin owed contractual duties to each other pursuant to the Subcontract, the express provisions of the Subcontract also govern the award of damages.

---

[3] The appropriate mechanism for Peach State to recoup costs is to file a Bill of Costs.

**A.	Unpaid Job Costs**.  Paragraphs 15 and 30 of the Subcontract govern Peach States' damages in this case.  Paragraph 15 provides in pertinent part as follows:

> In the event a termination of Subcontractor's performance under this Subcontract for default is subsequently determined by . . . a court of competent jurisdiction to be wrongful, then such termination shall be deemed to have been a (sic) terminated by JJK without cause under the provisions of Paragraph 30, Termination for Convenience, and the compensation due Subcontractor, if any, shall be determined accordingly.

(Tr. Ex. 7, para. 15).

Paragraph 30 controls the amount of damages to which Peach State is entitled in the event Kirlin is deemed to have breached the Subcontract.

> . . .Termination for default under Paragraph 15, if wrongfully made, shall be treated as a termination for convenience. Settlement of the Subcontract shall be made in accordance with the provisions of the Termination for Convenience clause in the Contract documents.  If none, the Subcontractor shall be paid only the actual cost for work and labor in place, plus ten percent (10%), or a prorata percentage of the Subcontract Price equal to the percentage of completion, whichever is less. Subcontractor shall not be entitled to anticipated profits on unperformed portions of the work or any other consequential or direct damages of any kind or description.

(*Id*. at para. 30).

Peach State argues that the Subcontract supports its position that it is entitled to additional damages such as lost profits and attorney's fees.  According to Peach State, the Subcontract specifically contemplates additional damages because the Subcontractor "shall have the rights and remedies available at law or in equity."  (*Id.* at para. 15).  Peach State, however, ignores the introductory phrase that limits its damages.  The Subcontract specifically states that "[e]xcept as limited by this Subcontract," Peach State has rights and

4

remedies in law and equity. Because the Subcontract specifically limits Peach State's damages to actual cost of work and labor, plus ten percent (10%), Peach State is entitled to no more than that.

The parties do not dispute that if Paragraph 30 governs, Peach State is entitled to be paid for its unpaid job costs in the amount of $518,375.02.[4] The parties also agree that pursuant to that paragraph, Peach State is also entitled to ten percent (10%) of that amount which equals $51,837.50. Pursuant to Paragraph 30 of the Subcontract, the Court concludes that Peach State is entitled to an award of damages in the amount of $570,212.52. Under Maryland law, "pre-judgment interest as a matter of right is the exception rather than the rule." *Ver Brycke v. Ver Brycke*, 379 Md. 669, 702, 843 A.2d 758, 777 (2004) (quoting *Buxton v. Buxton,* 363 Md. 634, 770 A.2d 152 (2001). Kirlin offers no reason why the Court should not award Peach State prejudgment interest. The amount of Peach State's unpaid job costs are "certain, definite and liquidated (calculable) as of that specific date prior to judgment." *Harford County v. Saks Fifth Ave. Distribution Co.*, 399 Md. 73, 96, 923 A.2 1, 14 (2007). Consequently, the Court concludes that Peach State is entitled to prejudgment interest at the rate of six percent per annum in accordance with Maryland law.[5] "The determination of a certain rate of prejudgment interest is generally a matter of discretion on the part of the district court, . . . [and] [c]ourts have held that state law applies

---

[4] At trial, Peach State sought $1,039,830.05 in unpaid job costs but that amount included $185,762.91 in attorney's fees. (Tr. Ex. 99). Deducting the attorney's fees from the unpaid job costs, Peach State is seeking $854,067.14 in unpaid job costs. The parties agree that Kirlin has paid $335,692.12 leaving a balance due of $518,375.02. The parties both rely on these figures in their briefs on damages.

[5] "[P]rejudgment interest shall be calculated at the legal rate of six percent per annum." *Harford County*, 399 Md. at 96, 923 A.2d at 14 (citing Md. Const. Art. 111, § 57) ( "The Legal Rate of Interest shall be *Six per cent. per annum;* unless otherwise provided by the General Assembly.").

to questions involving prejudgment interest in diversity cases." *See U.S. v. Dollar Rent A Car Sys., Inc.*, 712 F.2d 938, 940 (4th Cir. 1983).

Relying on Paragraph 15 of the Subcontract, Peach State argues that it is entitled to other rights and remedies including lost profits and attorney's fees. In addition, Peach State contends that Kirlin's attempt to limit its liability for a breach in Paragraph 30 renders Paragraph 30 illusory, and Kirlin should not be permitted to avoid liability. The Court disagrees that Paragraph 30 is illusory or that Kirlin cannot limit its liability.

Peach State's reliance on the language in Paragraph 15 about rights and remedies is misplaced for two reasons. First, Peach State ignores the introductory phrase which states "Except as limited by this Subcontract." (Tr. Ex. 7 at para. 15). Second, Paragraph 30 specifically precludes damages for lost profits.

> Subcontractor shall not be entitled to anticipated profits on unperformed portions of the work or any other consequential or direct damages of any kind or description.

(*Id.* at para. 30).

Maryland "adhere[s] to the principle of the objective interpretation of contracts." *Myers v. Kayhoe*, 391 Md. 188, 198, 892 A.2d 520, 526 (2006). *See also Clancy*, 405 Md. at 557.

> [A] court "should keep the analysis simple when the language permits: 'Where the instrument includes clear and unambiguous language of the parties' intent, we will not sail into less chartered waters to interpret what the parties thought that the agreement meant or intended to mean.'" *Long Green Valley,* 432 Md. at 314, 68 A.3d 843 (quoting *Garfink v. Cloisters at Charles, Inc.*,392 Md. 374, 393, 897 A.2d 206 (2006)).

> This rule ensures certainty in contracting. If a contract's language is unambiguous, it is simple enough to "give effect to that language 'unless prevented from doing so by public policy or some established principle of law.'" *SDC 214, LLC,* 395 Md. at 434, 910 A.2d 1064 (quoting *Miller,* 393 Md. at 637, 903 A.2d 938).

*Newell v. John Hopkins Univ.*, 215 Md.App. 217, 236, 79 A.3d 1009, 1020 (2013). The language of Paragraph 30 specifically repudiates an award of "anticipated profits on unperformed portions of the work or any other consequential or direct damages of any kind or description." Thus, the plain language of the Subcontract governs, and the Court concludes that Peach State is not entitled to an award of damages for lost profit.

**B.  Lost Profits Damages**. Even if the Court were to find that lost profits damages were available under the Subcontract, the Court concludes that Peach State has failed to meet its burden of demonstrating that the amount of lost profits sought has "been proved with reasonable certainty." *Thomas v. Capital Med. Mgmt. Assocs., LLC*, 189 Md.App. 39, 464, 985 A.2d 51, 66 (2009).

Peach State argues that it is entitled to damages of lost direct profits in the amount of $747,133.03. David Schmitt, on behalf of Peach State, explained at trial how he arrived at this figure.

> Q: What are the total damages that Peach State is seeking in this case?
>
> A: $1,451,270.
>
> Q: And is it written on the page there in front of you?
>
> A: Yes, it is.
>
> Q: Okay. So let's look at the top number there. What does the top number represent, the two million dollar number?

>    A: That is the contract we had with Kirlin.
>
>    Q: That's the contract amount?
>
>    A: That is the contract amount. Correct.
>
>    Q: Okay. What about the number underneath?
>
>    A: That was our estimated cost to do the job per our bid -- per our internal bid.
>
>    Q: And what's that number?
>
>    A: $1,392,181.
>
>    \* \* \*
>
>    Q: So going back to tab 99, what was the anticipated profit and overhead on this project?
>
>    A: $747,133.
>
>    Q: And how did you get that number?
>
>    A: It's the difference between our job cost estimate and the contract amount.

(Tr. Trans. at II-4-6).

Thereafter, however, Schmidt acknowledged that the $747,133.00 figure contained not only anticipated profits but also attorney's fees, (Tr. Trans. at II-6), and overhead costs. (Tr. Trans. at II-36-37).

>    Q: You have a line item for $747,133; correct?
>
>    A: I see that.
>
>    Q: That's your anticipated profit and overhead recovery; correct?
>
>    A: Correct.

8

> Q: So it's not your anticipated net profit.
>
> A: It's profit and overhead as a combined number for us.
>
> Q: Right. And you understand what "net profit" means, don't you?
>
> A: Yeah.
>
> Q: Okay. So G&A is the -- general and administrative costs are part of this overhead; correct?
>
> A: Correct.

(*Id.*).

To recover lost profits under Maryland law, "the plaintiff must be able to prove lost profits with "reasonable certainty." *Thomas*, 189 Md.App. at 464, 985 A.2d at 66 (quoting *Della Ratta, Inc. v. Am. Better Cmty. Developers, Inc.,* 38 Md.App. 119, 138-39, 380 A.2d 627 (1977). *See also Atkinson Warehousing & Distribution, Inc. v. Ecolab, Inc.,* 99 F.Supp.2d 665, 668 (D. Md. 2000) (citing *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 389 A.2d 887, 907 (1978)). Peach State has failed to establish with reasonable certainty, the amount of lost profits. Peach State established the difference between the contract price and its *anticipated* job costs but presented no evidence to support its job costs. Moreover, Peach State included in its "lost profits" calculation an amount of attorney's fees and overhead costs without distinguishing between lost profits, attorney's fees, or overhead costs. "The evidence must, however, lay some foundation enabling the fact finder to make a fair and reasonable estimate of the amount of the damage." *Della Ratta, Inc.*, 38 Md. App. At 143, 380 A.2d at 641.

9

> The rule that uncertainty as to the amount of the damage will not prevent a recovery does not mean that there need be no proof of the amount of the damage. To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the plaintiff's loss. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances.

*Id.*

Viewing the evidence presented at trial, and construing all reasonable inferences therefrom, the Court concludes that Peach State has failed to lay any foundation from which the Court could establish with reasonable certainty the amount of any lost profits. Consequently, the Court declines to award Peach State any damages for lost profits.

**C.     Costs and Expenses.** Peach State seeks, as part of the damages award, costs and expenses. As the prevailing party, pursuant to FED.R.CIV.P. 54(d)(1), Peach State is entitled to an award of costs, other than attorney's fees. The mechanism to secure costs is dictated by Rule 54. Peach State may seek costs and expenses as allowed under Rule 54.

**D.     Attorney's Fees.** Finally, Peach State seeks an award of attorney's fees as part of a damages award. The law is well established that in Maryland, consistent with the "American rule," "attorney's fees are ordinarily not recoverable by the prevailing party in a lawsuit." *Hess Construction Co. v. Bd of Educ. of Prince George's Cty,* 341 Md. 155, 159, 669 A.2d 1352, 1354 (1996); *Long v. Burson,* 182 Md.App. 1, 25–26, 957 A.2d 173 (2008); *Chang v. Brethren Mutual Insurance Co.,* 168 Md.App. 534, 551–52, 897 A.2d 854 (2006). Attorney's fees may be awarded when there is statutory authority, or "where parties to a contract have an agreement regarding attorney's fees." *Hess Construction Co.*,

341 Md. at 160, 669 A.2d at 1354. *See also Bausch & Lomb Inc. v. Utica Mut. Ins. Co.,* 355 Md. 566, 590–91, 735 A.2d 1081 (1999) ("[i]n the absence of statute, rule, or contract expressly allowing recovery of attorneys' fees, a prevailing party in a lawsuit may not ordinarily recover attorneys' fees."). Finally, "exceptions are quite rare under Maryland common law to the general rule that counsel fees, incurred by the prevailing party in the very litigation in which that party prevailed, are not recoverable as compensatory damages against the losing party. *Hess Construction Co., supra*. There is no dispute in this case that there is no statutory right to an award of attorney's fees, and the Subcontract does not provide for a mechanism for Peach State to secure attorney's fees. Peach State offers no cogent reason why this Court, sitting in diversity, should not apply Maryland's law to its request for attorney's fees. Consequently, the Court declines to award Peach State attorney's fees as part of its damages award.

## CONCLUSION

For the reasons as stated in this memorandum opinion, and the memorandum opinion previously entered on June 22, 2018, it is

ORDERED and ADJUDGED as follows that:

1. Judgment is entered in favor of Peach State and against Kirlin on Peach State's breach of contract and wrongful termination claims, and Peach State is awarded damages in the amount of $570,212.52, plus prejudgment interest at the rate of six percent per annum in accordance with Maryland law.

2. Peach State's request for an award of damages for lost profits and attorney's fees is DENIED.

3. Judgment is entered in favor of Peach State and NAS and against Kirlin on Kirlin's counterclaim, and the counterclaim is DISMISSED with prejudice.

4. Judgment is entered in favor of Kirlin and against Peach State on Peach State's claims of promissory estoppel, unjust enrichment, negligence, negligent misrepresentation, declaratory judgment, respondeat superior, and suppression, deceit, non-disclosure and concealment of material facts, and these claims are DISMISSED with prejudice.

5. Costs are taxed against Kirlin for which execution may issue.

6. Peach State's motions for status update (docs. 117 & 118) are DENIED as moot; and

7. This case is DISMISSED with prejudice.

A separate judgment will issue.

Done this 5th day of February, 2020.

                                        /s/ Charles S. Coody
                                    CHARLES S. COODY
                                    UNITED STATES MAGISTRATE JUDGE